May it please the court, my name is Rebecca Pannell and I represent Jamie Whittenburg. I have discussed with co-counsel division of time. Co-counsel has been generous enough to suggest that I take, at first it was 15 minutes and then 14 minutes, perhaps saving some for rebuttal under their assessment that perhaps my issue is more complex. Okay. We'll see how it goes. Okay. This case, as I opened the reply brief with, is I think about when does the crime of robbery end. And the reason I say that is, is if the panel disagrees with Judge Whaley's assessment that Jamie Whittenburg could have involved herself in the robbery by sending her niece out to lie to the police, if that was in error, then this case needs to be remanded, either based on the fact that the jury was never instructed as to when a crime, the crime of conspiracy ends, or at the very least that Judge Whaley committed an error of law when he denied the motion for new trial, because that was the very basis that Judge Whaley identified. Ms. Pannell, can you help me, without regard to how Judge Whaley saw the proof, are you challenging the sufficiency of the evidence? No. Obviously, if you take the evidence in the light most favorable of the government, then Jamie Whittenburg was the spearhead of the robbery. That's not the test. The test is Judge Whaley viewed all the evidence, looked at the witnesses, and looked at the problems with the cooperating witnesses, and he did not believe them. And he did not think that the jury believed them. And he said in his ruling on the new trial motion that he thought the jury believed Jamie Whittenburg. Nevertheless, he thought that they believed that her admissions were enough, that she started to figure things out when she was back at her apartment, and that by sending her niece out to lie that she involved herself. The problem that I have, and maybe it is subsumed within the district court's assessment of the evidence, which is different in ruling on a motion for new trial than it is on a sufficiency of the evidence case, but it struck me as odd since we don't know why the jury convicted of conspiracy but not of the substantive bank robbery and firearms charges, that there was evidence in the record from which the jury could have concluded that she was involved from the very beginning all the way through to the very end. Correct. And of course we know that she drove the getaway car. So even though Judge Whaley had the opportunity that I didn't have to see and hear the beady eyes and the sweaty palms of the co-conspirators who testified, there is still a substantial amount of evidence from which the jury reached its verdict. And the question is whether or not she didn't get a fair trial because of the fact that the witnesses lied. And that really goes to the new trial standard. I'm looking through my notes. There's a case cited, and I'm trying to remember the name, about some dentists that went to trial on a racketeering case that they were price-fixing Medicare claims. And the judge in that case had granted a new trial in part because he thought he instructed the jury wrong, but also he just thought that basically the evidence preponderated against finding them guilty, that he thought that basically the dentists weren't guilty. And this panel in looking at the case said, you know, there was no instructional error. There were no instructions that were wrong that were given to the jury. But to the extent that the judge in looking at a motion for a new trial, which is not saying someone has to be acquitted, but just a new trial, the judge can weigh those things and think, you know, I think an injustice was done here. In that case, I think that the dentists, before at least they can be convicted, the jury should be instructed a little bit better. But is the basis for your argument that the district court abused its discretion in denying the motion? Isn't that the standard? Yes, and it is. And it's clear throughout cases in different contexts that a judge abuses its discretion when the judge bases a decision based on a mistake of law. That is an abuse of discretion. So to the extent the judge said, I don't think an injustice was done here, which is the standard for a new trial, because I think she became involved in the conspiracy to commit bank robbery when she sent her niece outside. If that was legally erroneous, then it is an abuse of discretion. But does it matter where they're – I don't think you can refute the fact that your client drove the getaway car and, you know, tires spinning and after the robbers jumped into the car. I mean, that in itself is sufficient to establish her participation in the conspiracy. Well, again, we're not arguing sufficiency. I understand that, but why is it an abuse of discretion for the district judge to look at that evidence and say, you know, I have problems with regard to the testimony of some of these cooperating defendants who obviously were trying to roll over on her in order to improve their own situation. But the evidence does support a conviction for conspiracy, as did Ms. Wittenberg, and a retrial is not warranted here because there was no miscarriage of justice. And that's just not what he said, though. I think it would be a very different case if Judge Whaley said, I think that when they hopped in the car, she knew what was going on. There are cases from this court saying that a getaway driver who doesn't know before the robbery but figures things out when he sees someone hopping in the car, that getaway driver is involved in the robbery. Her testimony was she didn't know at that time, and Judge Whaley didn't think she did. But she had the testimony of the one witness who had absolutely no motive to lie, and that is the landlord who saw and recognized her vehicle and testified to the flight of the robbers, the jumping into the getaway car, and the classic tires spinning, dirt flying, takeoff. And that certainly was added to Mr. Stearns' testimony beyond what he initially told the police, as we could re-weigh and look at these things. But Judge Whaley was there. I wasn't there. Judge Whaley was there, and he heard Mr. Stearns. His concerns about the veracity of the cooperating co-defendants have nothing to do with what Mr. Stearns saw and testified to. He also said that he believed Jamie Wittenberg, and Jamie Wittenberg said she didn't know. Let me interject here because I'm hoping this is a helpful interjection. Understanding your argument in the terms most sympathetic to the argument, it is that perhaps Judge Whaley made a mistake, and as a matter of law, it was not participation in the conspiracy to send the niece out to lie because the object of the conspiracy had already been accomplished. So she's doing something else. She's covering up a crime that's already been completed. Correct. If we agree with that, that is to say, if we agree that the conspiracy has already been completed when she does that, that means that the ground that Judge Whaley gave for denying the motion for retrial is legally erroneous. Right. If I get to that point, I think the furthest I could go from there is to say, I think I want to remand to Judge Whaley so that once he understands that that's outside the scope of the conspiracy, he can again look at the motion for retrial. And I thought about that. Because I'm not sure, once he knows that that's not available as a rationale, that he wouldn't come to the same conclusion. There are lots of reasons I might think that he would come to the same conclusion. He ends up sentencing to time served. There was evidence, particularly the method in which the pickup truck leaves and so on, that is not the co-conspirators of that, if I can use the term that may or may not assume the answer. So I think the most I could possibly do is to send it back to Judge Whaley saying, you know, the conspiracy was complete. And the sending out of the niece can't be part of the conspiracy. Well, let me ask you to address that. Because I'm not sure that would be grounds for relief in light of what the jury had. But assuming it is, how about addressing precedent on the issue that Judge Whaley relied on? That is, isn't there a law that would say that a bank robbery conspiracy continues through like helping the robbers escape? So if you characterize sending the niece out to tell people no one was there as trying to help others get out of there, why wouldn't that be still part of the bank robbery conspiracy? Well, clearly you need to start with the Supreme Court's case in Grunewald, which says there is a difference between concealing things from the police, which any conspirators that commit a crime together have this implicit agreement to do, versus the substantive crime. There needs to be a dividing line. And this court in the Vowiel case, if I'm pronouncing that correctly, talked a lot about conspiracies and talked about an escape conspiracy and said, in that case, escape. The conspiracy to commit the escape ended when the escapees reached a safe house. But the problem with the crime of escape is it's a continuing crime. And this court discussed that. And that's only, though, and this court said very explicitly, that's only as to the escapees. As to the person who's not an escapee, there's two separate crimes, which is akin to what we're dealing with here. How about the precedent while we're on the question of escaping from the robbery, how about the precedent that says, and the conspiracy continues up to the point where they divide the proceeds of the robbery, which is exactly what your client was in the middle of doing when the police arrived. If you believe the co-conspirators. I mean, she did not admit to doing that. Well, the police found the money or at least a portion of the proceeds inside her own. Right. Hidden by the others. I mean, again, you have to separate believing what they said from what Judge Whaley determined was the basis for the verdict. The co-conspirators said that the money was divided before Jamie Wittenberg sent her niece outside. So even if you take the conspiracy that far, she didn't, she sent her niece out after that point in time. The case, the Bowiel case said, look, as to conspiracy to commit escape, when you're not the escapee who continues to commit a crime until they're caught by police, the crime never ends, can go on for 10 years until a person's caught by police. As to conspirators that help, it ends once they reach a temporary safe place. So in this case, to the extent that there was an escape occurring, that ended once the robbers reached the apartment. They reached a temporary safe place. How is it a temporary safe place if they're surrounded by the sheriff? They weren't initially. I mean, it's a temporary safe place, but you also need to look at. The emphasis is on temporary. Is that temporary? However fleeting. But look at the example I gave in my reply brief. If Jamie Wittenberg had just been home the entire time and they come in and they divide up the money and then they tell her what she's done and she just tells her niece to go outside and lie, is that involving yourself in a conspiracy to rob or being an accessory after the fact? There has to be a dividing line. What purpose are you furthering if that's all you're doing? So if you take Judge Whaley at his word that all she did was send her niece out to lie, that's not furthering the purpose of the conspiracy to rob and the benefit from robbery. That's concealing from the police. But counsel, if you're trying to send the posse off in the wrong direction, isn't that part and parcel of making good your escape? Well, part of it depends on what was the conspiracy from the beginning. And Grunewald talked about this in other cases. Sometimes there may be a two-part conspiracy. First we're going to rob a bank and then we're going to do a money laundering scheme. In that case, there is a sort of plan further than the robbery for what to do. And there may be, as this court said in Atkins, a plan further than the robbery to conceal money in a certain way, which in Atkins was a separate crime. So it was more than just the robbery. But this court has never said that it goes beyond the division of the funds, that it has to end at some point. And in this case, sending the niece out to lie and saying no one's there, that's a classic case of just trying to hide from the police. It's like the money laundering case that the Supreme Court decided last term, where the person just had the money in the car. That's not laundering. That's just hiding the money. Similar in this case. All a person is doing when they tell the police to go outside and say no one's here, all it is is hiding. And implicit in every conspiracy is an agreement that we're going to try to not tell the police where we as robbers are. But that wasn't part of the conspiracy from the beginning. There were no facts deduced. There was any sort of plan ahead of time of what we're going to do after the robbery. The witnesses talked about that they were going to leave and go head on a bus right then, and that's when they saw the police. Karen Vineyard said you were ready to go onto the bus. I would have a really good argument if the evidence was confined solely to what occurred at her apartment and she wasn't behind the wheel of the getaway car. I'm really hung up on the fact. And I think the government is too. The government's hung up on not going where Judge Whaley went. Where Judge Whaley went, I think, was clearly not only backed up by what he said during the new trial motion hearing, but in how he sentenced everybody. It shows, I think, the force of what he thought happened was he didn't think that the evidence showed that Jamie Wittenberg did it. He didn't overturn the verdict because there was sufficient evidence. I don't think I read it quite. But he clearly sentences her to time served. He clearly separates her off from that. And I didn't submit the sentencing transcript, which I apologize. It wasn't technically relevant, but that's how he started the sentencing hearing. I don't think he did this. And that, the new trial standard is did you think an injustice was done? I was surprised that he only gave 24 months to the robbers themselves who put the gun in. I know. Consecutive to a 924C. All consecutive? Right. All right. I missed that. Okay. Now, you've used some time. I have. Let's hear from your co-counsel. Thank you. And then we'll hear from the government. Thank you. May it please the Court, Gerald Smith. I represent Mr. DeVore. A couple of issues I think is important because we are in kind of a unique position where we have some conflict between defense counsel. One of the things that struck me about this, and I think that it's very important to consider, is the state of the record as it pertains to Mr. DeVore. In Mr. DeVore's sentencing hearing, Judge Whaley denied any reduction for substantial assistance on the basis that the jury rejected the testimony. There was nothing from Judge Whaley at that point saying, I don't believe him. In fact, Judge Whaley did not make any comments about his assessment of the testimony until Ms. Wittenberg's sentencing, which I believe was about a week and a half. I need to check the dates for sure. But about a week and a half before our reply brief. He does say, though, that he didn't believe the testifying co-conspirators. He did not. He said the jury rejected the testimony. And I think that may be a subtle but very important distinction. The jury rejected. How can you read that in any way other than they didn't believe him? That's different than him not believing them. He did not say at the hearing, at the sentencing hearing for Mr. DeVore, I don't believe you told the truth. He said the jury didn't believe you. Mr. Smith, I read that as simply the trial judge saying, I respect the verdict of the jury. I don't understand it. And frankly, I'm having a hard time understanding whether this was a compromise verdict, whether they felt sorry for Ms. Wittenberg. I don't know. Well, and I would suggest, Your Honor, and the basis of my appeal, our briefing on this issue, was his statement the jury rejected the testimony. And the next step to that is he had no basis to determine that because, frankly, the verdict does not make sense. On a motion for a new trial, though, isn't the trial judge permitted to weigh all the evidence that he heard at the trial in order to determine whether a manifest injustice has occurred? But I do not think that the determination that he did not believe the testimony came up until the sentencing. It didn't come up at a new trial. We're not in a position of a new trial. Mr. DeVore pled guilty under an agreement with the government. The fact that the jury found Ms. Wittenberg guilty of the conspiracy and not guilty of the substantive offenses is an inconsistent verdict because, by law, if she's guilty of the conspiracy, she would have been guilty of the underlying offenses also. But the fact that it's inconsistent does not permit us to grant relief, does it? And that's because the law recognizes that there may be a compromise verdict. If the jury may have decided that Ms. Wittenberg is a methamphetamine addict and we felt sorry for her, so we're only going to tag her with conspiracy and not with armed bank robbery. Exactly. And for the same reason, we cannot say, Judge Whaley could not say, this Court cannot say that the jury rejected Mr. DeVore's testimony. They could have accepted his testimony. They could have believed every word he said from the witness stand. And what does Judge Whaley mean when he says the jury rejected his testimony? Your Honor, I believe there's been too much speculation in this case by Judge Whaley and continuing, because that could only be speculation. He based that determination. Well, frankly, I'm at a loss. If you're correct and your client told the truth and everybody was telling, well, I can't be true because the testimony was not consistent. So that's the job of the jury. That's why we're not the trier of fact. But having said all that, I guess the question that the Court was wrestling with is, did your client substantially assist the government? And based on the fact that the jury didn't convict all of the conspirators of the crimes they were charged with, I read that as saying he didn't help the government as much as he promised he would. Two things. First of all, he did not promise to get a conviction for the government. He promised to tell the truth. He promised to testify. He had several free talks. And the plea agreement is very carefully worded such that the U.S. attorney makes it clear that it is up to the trial judge whether or not the defendant gets substantial assistance credit. Isn't that right? It's up to not the U.S. attorney who can do anything other than recommend. Again, this is a two-part process here with substantial assistance. And I have stood, not at this podium, but many like this, and argued that this determination, this determination of substantial assistance being reserved for the government and not to allow the trial judge to make the determination whether or not there's been substantial assistance simply as a violation of due process. And, of course, that has been a losing argument every time I've made it. But are you making it again? No, I'm not. I'm accepting the law at this point. All right. Okay. Because, and as the government says in its brief very clearly, that the case law takes that decision out of the hands of the judge and gives it to the government. The government determines whether there's been substantial assistance. I have a question when Judge Tolman is done with his. No, go ahead, Judge Gould. Well, assuming the district court does not take the advice of the government on the downward departure, can we review that as a standalone issue? Or do we just review the reasonableness of the sentence that your client got? I argued in the reply brief that we don't get to the reasonable issue if there has been a procedural error. If once the court determines what the sentence is going to be based on, that there's been a problem up to that point. And the issue here is that the judge did not say, if Judge Whaley had said, Okay. The government says that the defendant provided substantial assistance. But in my view, when you look at the seriousness of the offense and the criminal history and everything else, it doesn't merit a departure. We'd be in a different position here. And I would be making a different argument. But the judge said there was no substantial assistance. And even said it's my job to determine whether there was substantial assistance. And that is simply wrong according to the case law. Now, did we used to have precedent that said we didn't have jurisdiction to review that kind of decision? I'm sorry? I didn't understand the question. Did we have precedent saying we have no jurisdiction to review the district court on that? To review the district court decision, there's no substantial assistance. I don't believe there is precedent to prevent this. In fact, I think the precedent is the opposite, that there is jurisdiction. And there's a necessity to review that when the government, who is given the responsibility to determine whether substantial assistance has been provided, says there has been and the district court says no, then this court has to review that because that is a procedural error. And as I said, if the decision had been, you know, I've considered all the factors. And here's what the sentence I think should be. Even considering all these factors including the substantial assistance, we'd be in a different position. But this is very much as if the court had ignored another factor that it's required to ignore under 3553 so that the reasonableness of the sentence is not an issue. And that's what I said. If the court had said I accept the government's assessment of substantial assistance, but I think in the total picture of things, this is a reasonable sentence, we'd be in a different position. But again, we would be forced to speculate as to what Judge Whaley would have done if he had accepted the fact that there was substantial assistance. The government said there was. He did not consider that. Okay, why don't we hear from the attorney for Ms. Vineyard and then we'll hear from the government. Good morning. Two minutes left. My name is Terry Ryan. I represent Karen Vineyard. I was not trial counsel. I'm appointed under CJA to prepare the appeal. I first met with her in jail, and she told me what had happened. So I have prepared this appeal. The basis of this appeal is that under a decision that came out of the Ninth Circuit under Cardi that Judge Whaley made some erroneous findings or decisions at the time of sentencing, and therefore this sentence should be sent back, remanded to the district court for resentencing. My client entered a plea of guilty to conspiracy, and I think it's interesting that the jury, the finder of fact, in the Wittenberg case knew that and found her guilty of conspiracy, found Wittenberg guilty of conspiracy, and dropped to the counts the counts that the prosecution dropped when my client pled guilty. So having pled guilty, then, the pre-sentence report is prepared, and we've got a copy of that also. The officer that prepared the pre-sentence report got information from the FBI and also talked to the FBI, prepared the report, and said that Karen Vineyard was the least culpable. She was essentially just along for the ride. But then we get in front of the district court for sentencing, and the district court, having presided over the trial of Karen, excuse me, Jamie Wittenberg, decides at the sentencing of Karen Vineyard that Karen Vineyard, first of all, misled the jury, and the judge also found that or decided that the jury rejected her testimony. And so I'm asking this court to find that those two findings or determinations by the district court are erroneous under the Cardi decision, and I'll quote from the Cardi decision. Before you go there, let me make... So we would have to conclude that the district court's factual determination that your client lied and that the jury disbelieved her was clearly erroneous? Is that right? Before we get to whether or not he properly calculated the guideline range? Yes. How can we do that in the face of the jury's unexplainable split verdict? The jury found her guilty, found Wittenberg guilty of conspiracy, and if you look at all the overt acts listed in the conspiracy, this is what they found her guilty of. We don't know whether they picked out one or two of them. True, but the problem is that the district court, I think, has the right on making the substantial assistance determination to make a credibility determination to which I think we have to defer unless we can declare it to be clearly erroneous. Well, the 5K1.1 says that the court may depart from the standard sentence, and to me that gives the court the discretion. There's no question he has the discretion. The question, though, is whether in order to find that he erred as a matter of law in computing the procedural part of the sentencing, that he clearly erred when he rejected her testimony as incredible. And I think I remember the record right. Your client made some inconsistent statements to the sheriff shortly after she was arrested that was used to impeach her at trial. Isn't that right? I believe so. Again, I was not at trial. I understand that. I have the entire transcript of the Wittenberg trial. Okay. As I understood, maybe the portion of the record I looked at, as I understood it, she did what we see many times with defendants who are first interviewed on arrest. She basically minimized her involvement, denied it, and then as the interrogation proceeded, she began to incriminate herself more broadly. She began to incriminate herself. She had discussions with the U.S. Attorney's Office. She was prepped for trial and actually testified in the Wittenberg case. But also, as I recall, the other problem was that she first denied that Ms. Wittenberg had any involvement in the conspiracy, but then at trial fingered her as being the mastermind behind the robbery. That's a pretty significant difference. But how do you get from there to she lied? She gave one of those two versions to the jury. Well, both can't be true. So either she lied to the sheriff shortly after she was arrested or she lied to the jury when she testified. But only one of those is significant. Only one of those is relevant, whether she lied to the jury and not the sheriff. It's relevant under prior inconsistent statements as going to her veracity and her credibility, and I would have to declare that Judge Whaley clearly erred in finding she didn't tell the truth when faced with two pieces of admissible evidence that are completely diametrically opposed. I just don't see how I can get there, counsel. But he wasn't asked to determine whether she lied to the sheriff or lied to the jury. He didn't have to. It came in at the trial, and the jury had to choose one version or the other. And the jury found her guilty. Yes, but the judge, in trying to decide whether or not she provided substantial assistance, had to decide whether she cooperated in a truthful fashion. And in the face of that evidence, I don't see how I can declare it was clearly erroneous for him to conclude that she didn't testify forthrightly. But how would he know? Because of the inconsistencies between what she said then and what she said at the trial. It's up to the jury to determine credibility, not the judge. But he's making a substantial assistance finding at sentencing, and he's got to do that on the basis of his assessment of whether or not what she said was helpful or not. And it's generally not helpful when cooperating defendants don't tell the truth throughout from beginning to end. I think the court didn't give enough credence to what the prosecutor said. And the comment to 5K1.1 says substantial weight should be given to what the prosecutor says. Substantial weight. So in this case, the prosecutor never said, gee, I think you're right, Judge, I think she lied, but I want to pursue this substantial assistance motion anyway. Okay. I think we've got the argument of all three of the attorneys for the defendants. Let's hear from the government, and each of you will get a chance to respond. Thank you, Your Honor. Good morning. May it please the Court. My name is Joseph Harrington. I'm an assistant U.S. attorney for the Eastern District of Washington. That's Spokane. This case, it's an interesting case the way it has been framed and the way things turned out. Were you the trial attorney? I was, Your Honor. In this case, four people were charged by an indictment with committing armed bank robbery, conspiracy to commit armed bank robbery, and then brandishing a firearm in connection with a crime of violence 924C. Mr. Potnik, who did an appeals sentence, was the person that actually went into the bank with the gun. He ended up pleading guilty to the indictment, to the charges in the indictment, and there was no substantial assistance agreement pursuant to that plea agreement. But he did testify at trial. He pled straight up and testified with no deal? He did, Your Honor. A bold move. Your Honor, and I have my suspicions why he did that. I think he felt responsible for getting Mr. DeVore and Ms. Vineyard involved in this matter, and that was consistent with his testimony, and it was consistent with what he did in this case. He was sentenced to 108 months by Chief Judge Whaley. Mr. DeVore pled guilty to all three counts with the possibility of getting a substantial assistance motion. He cooperated, spent time being debriefed by government agents, and in fact testified during Ms. Wittenberg's trial. The government then filed a motion for substantial assistance, which Chief Judge Whaley disavowed and ultimately sentenced him to 108 months as well. Ms. Vineyard pleaded guilty to the conspiracy charge. The government moved to dismiss the other two charges. Because it was the government's position, she was very minimally involved in this case. She cooperated early on, and Judge Tolman, as you noted, did minimize her involvement early on, and while being spoken to by the arresting officers, basically said she wasn't involved, and the longer she talked, the more information she provided, some of which information then the officers used to ultimately corroborate her statements. She pled guilty, and she testified at Ms. Wittenberg's trial, and the government filed a motion for substantial assistance in her case. Chief Judge Whaley disavowed that substantial assistance motion and sentenced her to the statutory maximum. Is the district court, is it entitled to disavow your assistance recommendation? Yes, Your Honor. And what's the standard under which we review that? Your Honor, with respect to filing a substantial assistance motion, that is something that is left to the discretion of the United States Attorney's Office unless there's some sort of constitutional or arbitrariness involved in the decision. Once you file it, as here, when you recommend that there has been substantial assistance, what's the standard under which we would review a district court rejecting that? Your Honor, I think it's, my understanding of the law is it's part of the second step of a court's review of a sentencing proceeding. This wouldn't be considered a procedural error or part of the procedure, but whether it was a reasonable sentence that was imposed under the 3553 factors. You're saying it would not be a procedural error? I don't. You would view it as part of the substantive reasonableness? I think so, Your Honor, because in this case, there was, in each one of the pre-sentence investigation reports, there was no real significant dispute about the calculation of the guidelines. So it looks like the guidelines were calculated appropriately. The question then becomes, is once you find out what the appropriate advisory guideline range is, should there be a reduction based on a substantial assistance? And I think that goes to, I would submit it goes to the 3553 factors to determine what a reasonable sentence should be. As I read what Judge Whaley did, or Chief Judge Whaley did, he, I think, was quite willing to assume that Vineyard and DeVore did provide substantial assistance to the government, but the form the assistance took was to lie and to try to convict Ms. Wittenberg of something she didn't do. And in his view, that was not a form of substantial assistance that warranted a reduction in the sentence. And I think that's a fair categorization of the way Chief Judge Whaley saw his case. The government, of course, had a different opinion, and that was the reason the government filed a motion for substantial assistance and also made recommendations that the court rejected. So you made the 5K1 motion because you felt obligated under the terms of the agreements that you'd entered into to file the motion? It wasn't just me, Your Honor. It was a collective body at the U.S. Attorney's Office. I understand. But you would not have filed the motion had you believed that the defendants had not honored the terms of their agreement. That is absolutely correct, Judge Tallman. But recognizing that the court still has the discretion to give substantial assistance credit and to depart downward or not. And that puts the government in somewhat of an unseemly position because, as set forth in the government's briefing in the DeVore and Vineyard case, I think that the court had the discretion to reject that substantial assistance motion and impose the sentence. Mr. Harrington, I have a question for you. Do we have any Ninth Circuit precedent that's informative on the issue whether a district court decision not to accept the recommendation to depart downward for assistance is reviewed as a procedural error? And if so, under what standard? Or whether it's just lumped in as part of the second stage of reviewing a sentence for overall reasonableness? Judge Gould, I did some research, and it's my understanding based on my research, and I'm not saying that I'm 100 percent correct, but I don't believe there's precedent in the Ninth Circuit with respect to that issue. There were cases from other circuits that applied a gross abuse of discretion standard in similar issues where a district court denied a motion for substantial assistance. But I am not certain and I don't believe that there is a standard here in the Ninth Circuit. Were they viewing it as a procedural error or as a substantive reasonableness issue? The cases I reviewed in other circuits were pre-Booker. Okay. So are there any cases post-Booker that have addressed this issue? Not that I'm aware of, Your Honor. And pre-Booker, our case law was we had no jurisdiction to review the determination unless the district court said something that led us to believe it didn't realize that it had discretion to accept or reject it. I think that's a fair statement of the law, Your Honor. Yes. Okay. Interesting twist as a footnote, no one knows why the jury, no one, and I don't think we can, we're not in a position to speculate or just make that assumption. That reminds me, did you get an opportunity to talk to the jury? There's a local rule in the Eastern District that we don't speak to the jury, and we did have a brief hallway conference. We reported it to the judge, but we didn't get into any significant analysis with the jurors. What there was, as all cases are, there was a flux as they go along. When the defense began their case, they amended their witness list and brought on a witness. That witness's name was Shannon Lanning, and she claimed that she was a jailhouse bunkie or someone that shared a room in the jail with Ms. Vineyard. She was asked then by the defense counsel, well, did you talk about this bank robbery? Yes, I did. What did Ms. Vineyard say about how the robbery occurred? Over the government's objection for hearsay, that testimony was allowed to come in, and there was the government's position hearsay testimony that came in through Ms. Lanning saying that Ms. Vineyard claimed that this was all her idea, and Ms. Wittenberg was kind of sucked into it. That was, I would submit, extremely important hearsay testimony because during the jury's deliberation, they asked to have that testimony re-read to them, which Chief Judge Whaley had transcribed, brought the jury in, and actually read, and that was the only transcript or portion of the transcript that was read to the jury during deliberation, from this Ms. Manning, I'm sorry, Lanning. Why wouldn't that be admissible for the limited purpose of impeachment? It's not admissible as substantive evidence, but the jury can certainly consider it as it relates to the credibility and veracity of the key witness. And I think that would be correct if Ms. Vineyard had been confronted with those statements while she was- But she was never confronted, did you tell Ms. Lanning? No, Your Honor, not with respect to that. So no one can speculate, no one knows why, but certainly this hearsay testimony that came in that implicated Ms. Vineyard much more than the government believed that she was involved, I think may have been part of the mix or part of the calculus in the jury's ultimate verdict. And so we get to the verdict, and the question then, was there substantial evidence in the record that Ms. Wittenberg was involved? And I would submit respectfully that, at least it was the government's position, that Mr. Potnik, who had no incentive, because there was no substantial assistance filed for him, gave consistent testimony that was consistent with Mr. DeVore, whose testimony was also consistent with Ms. Vineyard's, whose testimony was also consistent with Mr. Starnes, who was the apartment manager, who saw Ms. Wittenberg driving the getaway vehicle with the back doors wide open, tires squealing. But that's not the argument that's being made. You're making a sufficiency of the evidence argument. The argument that's being made in favor of Ms. Wittenberg is that Judge Whaley viewed the evidence on those points, at least as I look at it, not credible. And the evidence that he viewed as credible, and the evidence he used for denying the new trial motion, was that Ms. Wittenberg told her niece, go down and tell them we're not here. And in his view, that was still in furtherance of the aims of the conspiracy. Now, assume, I don't ask you to concede, but assume that the conspiracy had ended at that point, and that Judge Whaley made an error of law, and that sending the niece down to tell the police nobody home was not in furtherance of the conspiracy. If we conclude that he made an error of law on that point, what do we do? With that assumption, Your Honor, then I think the case would have to be remanded back to Judge Whaley to reconsider the motion for a new trial, to find out whether, in Judge Whaley's opinion, and again, on a motion for new trial, a district court is completely entitled to judge credibility, regardless of what a jury did. Oh, I understand all those things. Okay. Given that, would you please argue the point as to whether or not sending the niece down at that point was in furtherance of the aims of the conspiracy? Your Honor, in the government's position, there's no question that that was part of the ongoing conspiracy. And why is that so? The argument being, of course, they've robbed the bank, they've come back to the residence, they've divvied up the loot in the sense that they've got it in three piles, then the police show up. Why has the crime of bank robbery not been accomplished? And I think that's the question is, so when does a conspiracy to rob a bank end? That's the question. I'm asking you, why has that not been accomplished at that point? In this case, and I think the Ninth Circuit case of Atkins cited in the government's brief, says that the division of profits is part of a conspiracy to rob a bank, which would suggest then, and of course, driving the getaway car is part of the conspiracy as well. But that's finished. The getaway car is, I mean, we've arrived back at the residence. Got that? Okay. I understand, Your Honor. Bear with me. If getting away from the bank is part of the conspiracy, then certainly sending this information out to officers would be, I would submit, part and parcel of getting away from the bank. No, but the question is, at what point is that done? Let's assume that they'd come back to the house and that they didn't divvy up the proceeds for three weeks. And until the proceeds have been divvied up, you say the conspiracy is still ongoing? I think it's got to be an ongoing continuity of action. And I think that's what the courts have looked to, those words of ongoing and continuity of action. What about those cases about they've arrived at a temporary place of refuge? In this case, Your Honor. I realize the temporary is short here. It's very temporary. Right. You've got to remember, well, part of the, it's the success of the conspiracy. People don't conspire to be unsuccessful. I would submit the success of the conspiracy is not to get caught. That's why you have a getaway driver, and that's why you speed away, and that's why you send your young, tender-aged niece to go out and tell the man. Well, I understand all that, but we do have case law that at some point the crime is completed and the people who assist the criminals after the crime is completed, they're guilty of a crime. It's just not conspiracy to commit the crime that's been completed. And it's very clear that she is guilty under, I think, any view of the evidence in accessory after the fact. I think the important fact in this case is the timing that was involved. There had been a diversionary call, 911 call place, that sent officers out into the wooded area around Newport. The robbery occurs. They're notified almost immediately, and the record would show that the officers arrived at the apartment within approximately ten minutes of the robbery. Now, that's, you know, it took five minutes to drive back to the apartment. Five minutes in the apartment, divvying up the money, shaving, secreting the firearm, and within five minutes the police were there, and they're outside of the apartment complex. I would submit that at that point the conspiracy is, there's a continuity of action, and the conspiracy is ongoing. And one further step in continuing the conspiracy is to send the niece out and tell the police that no one else is in the house and that, well, there was no adults in the house and clearly Ms. Wittenberg wasn't in the house. And that was just false. It was a lie, and there was only one purpose to do that, and that was to continue the ongoing nature of the conspiracy. Because when a search warrant is later executed at the house, not only do they find, they didn't find all the money. They found a third under a mattress and another third under a mattress, and no one really knows what happens to the other third. But Ms. Wittenberg's relatives went back to the apartment within the next few days, and the FBI just doesn't know what happened to them. It would not be the first time, in my experience, that the agents missed incriminating evidence when executing a search warrant. And this, I'm sure, won't be the last. But when the officers were there, when they executed the warrant, they found in a utility closet off the kitchen, stashed behind the water heater, the backpack, the box that was taken from the teller counter, the stamp that the teller used at the bank, bank bands, and other sundry items that were used in the course of the robbery, which would suggest to me that once the police were, you know, things were happening in the house. Things were being secreted. Things were being put away. Things were being hidden. And the officers were put off after the niece went out. Yeah. The trouble I have with this, and I'm not yet – frankly, I haven't made up my mind on this one. I mean, this is hard because it is a continuous deal, yet we do have case law that tells us that at some point the crime is committed. And even after the crime has been committed and it's been completed for the purpose of conspiracy, things continue to happen. That is to say, you know, you put the stolen money in a hiding place. You know, you buy a ticket to Rio de Janeiro. I mean, so the fact that things that are part of the escape may have continued doesn't necessarily mean it wasn't completed for purposes of participating in the conspiracy. So my problem is where is that line? And it's a tricky one on the facts of this case. I agree with you, Judge Fletcher. I think that in this case, though, I would respectfully ask that you look at the time that's involved. And I think it's the timing. There wasn't a week or there wasn't even a day or there wasn't even hours. We're talking about minutes from the actual robbery itself. So I think that's the factor that maybe would distinguish this case from the other cases that may address that issue. Can you help me? I'm still hung up on the spinning tires and the doors being opened because as I understand the record, the testimony of Mr. Stearns was unimpeachable. It didn't have anything to do with the testimony of the co-conspirators. He saw all that. He testified to all that. Judge Whaley didn't find him incredible. That's correct. Mr. Stearns was the apartment manager. He actually saw the four Confederates leaving the apartment that morning, and he recollected the time. He said it was about 9.50 because he had a small task to do before he went to the bank that morning. So there was a gap in time between 9.50 and when the bank robbery occurred, which was 9.20. So there was kind of this absence. Nobody knows what happened during that time. Ms. Wittenberg took the stand and said they drove directly to the bank. You said 9.20. You meant 10.20. I'm sorry, 10.20. Ms. Wittenberg said, we drove directly to the bank. The bank undisputed testimony takes about five minutes to get to the bank. Well, do you know what happens during that period of time? The diversionary 911 call is placed at 10.06. And then Mr. Stearns then arrives at the bank, and he sees Potnick and DeVore running out to the bank. Sounds like we're arguing sufficiency of the evidence. I understand your argument. The reason I'm hung up on it is that in assessing the motion for a new trial, Judge Whaley had to consider all of the incriminating evidence as it related to Ms. Wittenberg in determining that if you reject the testimony of the co-defendants, is there still relevant, considerable evidence to sustain the conviction for conspiracy, and therefore I conclude that a new trial is not warranted because that's enough to uphold the conviction. And in fairness, I think this is the issue. You have to be a knowing participant of the conspiracy. So Ms. Wittenberg's testimony was, I was in the truck. These guys came running out of the bank and said, go, go, go. And I was kind of frightened, so I took off. Because I thought they'd just been to the ATM machine, and they were in a hurry to get back to the apartment. I mean, that's pretty curious conduct. There is, and if you look at it from an independent perspective, I mean, spinning tires with the doors open and people yelling, it does raise some issues. But I think Ms. Wittenberg's testimony was a trial that I was there. These visitors I had that I couldn't get rid of needed money, and so I dropped them off at the bank. They were going to get some money wired to them, and so I dropped them off at the bank and just waited. And before you know it, they came running back and said, go, go, go. Who knows? They might have been throwing water balloons at the cops and they wanted to get out of there. There are lots of reasons why people say, go, go, go. Yeah, yeah, right, uh-huh. I've never seen one outside the context of a bank robbery, but maybe this is the first. But let me come back to this. I mean, this is quite a tricky issue here. I think you and Judge Tolman have been going over, I think, lots of reasons why, if we were to say to Judge Whaley, I mean, if this is the conclusion, that sending the niece out was not in further judicial jurisprudence because it was finished and send it back for the exercise of his discretion, again, knowing that as a matter of law, why he'd look at it again and he'd say, you know, I look at the spinning tires, I look at all the evidence that you're going over. He says, you know, I think there was enough evidence that she was involved earlier. I wouldn't be at all surprised if that's the decision he comes to. My question is, if we were to conclude that the conspiracy was finished when she sends the niece out to say nobody home or no adults home, is that his decision to make as a matter of his discretion or is it our decision to say this is what you could do if you want to? If I understand the question, I think, Your Honor, it's a question of whether manifest injustice resulted in this trial. And is that for him to decide once we take away what I'm assuming for the purposes of the question is a legally erroneous ground? I would submit, Your Honor, that that's an interesting question. I'd like to tell you that I think that's a de novo determination that you could make based on the record, but I pair that with the fact that a court, a district court, can make credibility to findings with respect to a new trial. And if plugging that into the analysis, I'm not sure whether this court could make that determination. It kind of sounds like the exercise of our discretion rather than his. So I'm not sure I have a... I'm not yet at a point where I would either agree or disagree with my distinguished colleague, but it does seem to me, so you correct me if I'm wrong, that we only reach this question that Judge Fletcher raises if we first conclude that the bank robbing conspiracy had terminated, that it was over like 30 minutes after the robbery or whatever when they divided up the proceeds, that it doesn't include trying to deflect the posse in Judge Tallman's words. And I think that's absolutely correct, Judge Gould. I think that if this court determines that sending the niece out to deflect the posse is part and parcel of the conspiracy because of the continuity of the action and because of the timing involved, that then this court would have to uphold Judge Whaley's decision. I'll reserve judgment on that one, but I would like, before your time runs out, I would appreciate it if you would address the issues once more. I just want to make sure I got this in mind. As to the other defendants, their main issue is it was a mistake for Judge Whaley to say no on substantial assistance. And if I'm understanding what you told me earlier, you're saying not only do we not have a Ninth Circuit precedent, whether that's substantive or procedural after Booker, but there's no other circuit court decision, you're aware of, it's kind of like a question of first instance. We sort of hate those because it takes a lot of work to come up with a theory that everybody might disagree with later. I understand, Your Honor. I would submit respectfully, and I acknowledge I could be wrong and may be wrong, but I don't believe that there is an instance, at least in this district, nor in other districts, I'm sorry, other circuits post Booker, where this issue has come up where a court has denied a motion for substantial assistance. I think it's something that happens so infrequently that it's not surprising that there isn't precedent in this circuit. In that regard, counsel did make a point, a good point in Mr. DeVore's case. The district court said, I've heard the trial, and as you're aware, the jury rejected the testimony of Mr. DeVore. I'm not sure whether that was, if the district court had an ability to make that conclusion because that was sort of speculating on how the jury ended up reaching the verdict it did. And Judge Whaley said the same thing in Ms. Vineyard's case, explaining the jury rejected the testimony of Ms. Vineyard. And I'm assuming that that's because of what appeared to be an inconsistent verdict from the jury. But I would submit respectfully the law is fairly clear that it's not within the district court's province to be suggesting or speculating on how a jury decided credibility issues. And certainly a compromise or a mistaken verdict or one based on lenity doesn't support a finding that a defendant was incredible. So for all those reasons, Your Honors, I would respectfully submit that Judge Whaley properly denied Ms. Wittenberg's motion for a new trial, that the jury instructions were not confusing, there was not a manifest injustice. And with respect to Mr. DeVore and Ms. Vineyard, the government did submit a motion for substantial assistance, did recommend significant departures from the advisory guideline range, but Chief Judge Whaley just disagreed with those recommendations. Okay, thank you very much. Now, we've given a fair amount of time to the argument in this case. Just to make sure that you've had a chance to respond, though, one minute per. So concentrate your thoughts. Thank you, Your Honor. I think that Your Honor's concerns about when did this end or not end also could be characterized as a jury question. And, of course, we raised the issue whether or not the jury instructions were erroneous because they didn't clarify to the jury. I think that the court can make outliers rules as far as this is when a conspiracy certainly is in existence and this is when it certainly isn't. But in the end, there's a jury question as to what did the conspirators agree to at the time that things began. That's what Gruenwald says. Look at what the conspirators agreed to from the get-go and was that what was prompting their later behavior. And sometimes that's just a jury question. Would we have to review that under a plain error standard? You would have to review it under a plain error standard, but the standard is met if there is a concern that the jury convicted based on a misunderstanding of law. Before you sit down, one last question. If we grant your motion for a new or direct the district court to order a retrial, I assume that if she's convicted again, the district court cannot impose a sentence longer than the one that it already imposed. We would hope. Isn't that still the rule? It used to be the rule. You would have to show a change in circumstance for why it wouldn't be somehow vindictive, but there are certain limitations on that. My concern around the jury instruction, I know I'm going over, it just goes to Judge Fletcher's concern that maybe this could be resolved by sending it back to the district court. I don't think that we can unring the bell of the district court's concern that the jury convicted Ms. Wittenberg on this basis of sending the niece out. If that's legally erroneous, then the jury instructions were plainly erroneous because they didn't clarify that issue. And Mr. Harrington's concerns about the person from the jail and the snitch and all that could be cleared up. In a new trial, I think certainly had that not come up, it would have been a big concern in this trial. Okay, thank you. Yes, just a couple of points. First of all, there was the issue of the credibility and the truthfulness of Mr. DeVore, and one thing that came up during the government's argument was the fact that Mr. Pontenac testified substantially the same as both Mr. DeVore and Ms. Vineyard, and he had no reason. He had no basis. There was the issue that DeVore and Vineyard, well, they did it to get the good deal. Mr. Pontenac had no reason except the truth. The other thing that I think is extremely important in this is the weight that the judge was to give to the fact that he did not consider because he improperly made the determination there was no substantial assistance because the jury rejected the testimony, and there's no basis for that except the inconsistent verdict, and that is pure speculation. That is an abuse of discretion, and this case has to go back. Okay, since the government has told us there's no precedent anywhere in the world, on this issue of the standard, what do you think is the standard we should use to assess whether Judge Whaley made a mistake in saying there was no substantial assistance? I think the standard to use is abuse of discretion, but the discretion is clear, that if you look at what happens with inconsistent verdicts and based upon what he said at Mr. DeVore's sentencing, the only conclusion is that he based his conclusion that the jury rejected the testimony on the fact that there was an inconsistent verdict. We cannot speculate on that. It is an abuse of discretion for a judge to speculate on the reasons for an inconsistent verdict. So he abused his discretion in making that determination, therefore making the determination that there was no substantial assistance and not putting that into the mix to determine what a reasonable sentence was. And it would be speculation to say what the judge would do had he correctly analyzed the situation and accepted the government's decision that substantial assistance had been given. I don't know. Maybe my colleagues know, but I don't know what he would do. I don't know what he would do if we said that was an error. And I think that's why it has to go back so we will know what he would do. Okay, thank you. Thank you. Mr. Ryan. Thank you, Your Honor. Your Honor, two points. I was going to quote from the Cardee decision out of the Ninth Circuit previously, but we went on to other things. I want to quote from that now. In the Cardee decision, the court said it would be procedural error for the district court to, and then it gives certain instances, one of which is for the district court to choose a sentence based on clearly erroneous facts. And that's my argument here that, as has been said by not only the prosecution, but by the defense that Judge Whaley was speculating when he says that my client and Mr. DeVore misled the jury or that they lied to the jury. How would he know? Thank you. Okay. Thank you very much. Thank all of you for your helpful arguments. The case or cases of the appeals of the United States versus Finger, DeVore, and Huttenberg is now submitted for decision. We're in adjournment for the rest of the day, and we'll reconvene tomorrow morning at 930. Thank you. All rise.
judges: Fletcher, Gould, Tallman